UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BLAKE JEFFREY JOHNSON,<br><br>            Petitioner,<br><br>  vs.<br><br>W. O'DONNELL,<br><br>            Respondent. | 4:24-CV-04012-KES<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is pending before the court on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Blake Jeffrey Johnson, who is incarcerated at the Yankton Federal Prison Camp in Yankton, South Dakota. Docket No. 1.  Mr. Johnson represents himself.  The respondent has filed a motion to dismiss.  Docket No. 7.  Mr. Johnson resists the motion.  Docket No. 11.  This matter has been referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and DSD LR 72.1.

## FACTS

Mr. Johnson's petition centers on his asserted entitlement to calculation of future sentence credits under the First Step Act ("FSA") and his claim that respondent is not following its own policy promulgated in the Bureau of Prison's ("BOP") Program Statement ("PS") 5410.01.  Mr. Johnson was

convicted of and (on September 2, 2020), sentenced for one count of conspiracy to distribute marijuana and one count of conspiracy to commit money laundering in the Western District of Missouri. Docket No. 9-2 at p. 2. He received 120 months' incarceration and five years of supervised release. Id.

Mr. Johnson's full term of incarceration would result in his being released from prison on October 28, 2028. Id. at p. 3. If Mr. Johnson receives only non-discretionary sentence credits (like good conduct time credits), he will be released May 7, 2027 (statutory release date). Id. If he receives application of discretionary sentence credits (such as FSA credits) in addition to non-discretionary sentence credits, his release date would be May 7, 2026 (conditional FSA release date). Docket No. 9-3 at p. 1. Respondent also terms this date Mr. Johnson's "projected satisfaction date." Docket No. 9-2 at p. 3.

On December 21, 2018, Congress enacted the First Step Act. Pub. L. No. 115-391, 132 Stat. 5194. The Act provides incentives for prisoners to reduce their risk of recidivism by engaging in programming specific to each prisoner's criminogenic needs. Id., § 101. If a prisoner who successfully engages in such programming qualifies as an "eligible" prisoner, he may earn federal time credits ("FTC") which can reduce the length of his or her sentence. 18 U.S.C. § 3632(d)(4). Up to 365 days of FTCs earned under the FSA can be applied toward early transfer to supervised release. 18 U.S.C. § 3624(g)(3). Any additional credits can be used toward early transfer to a residential reentry center ("RRC") or home confinement ("HC"). Cf. 18 U.S.C. § 3632(d)(4)(C); 28 C.F.R. § 523.44(c); accord Docket No. 9 at pp. 3–4, ¶ 9.

On January 19, 2022, the BOP promulgated 28 C.F.R. § 523.44 (among other regulations) implementing the FSA. Section 523.44 describes the application of FSA time credits. It does not require the BOP to automatically calculate a projection of a prisoner's maximum feasible FSA credits over the course of the prisoner's sentence. See 28 C.F.R. § 523.44.

On November 18, 2022, the BOP published Program Statement 5410.01, which describes how the BOP will implement 18 U.S.C. § 3632(d)(4). Program Statement 5410.01 was amended on March 10, 2023. In section 10(c) of Program Statement 5410.01, the BOP states that "[f]or Minimum and Low PATTERN risk inmates, consistent with the methodology described in Sections 6 and 7 of this policy, the Bureau will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence." See PS 5410.01, § 10(c), p. 16.

Mr. Johnson has always been classified as a low PATTERN risk prisoner and has, therefore, always been eligible to earn FSA time credits. Docket No. 9 at p. 5, ¶ 12 (citing Docket No. 9-4 at p. 2); 28 C.F.R. § 523.44(b)(2). Initially he earned 10 credits per 30-day period, but since January 8, 2022, he has earned FTCs at the maximum rate of 15 credits per 30-day period. Docket No. 9 at p. 5, ¶ 12 (citing Docket No. 9-4 at p. 2). As of February 7, 2024, respondent stated Mr. Johnson had earned a total of 510 days of FSA credits and he still had approximately 1,190 days remaining until his statutory release

3

date (i.e. his release date exceeds total credits by over 500 days).  Id. at p. 6, ¶ 13.

As noted above, Mr. Johnson's projected satisfaction date is May 7, 2026.  He asserts he will remain in earning status (i.e., eligible to earn FSA credits) up through that date, even while he is in prerelease custody.  Docket No. 1-1 at p. 1.  Mr. Johnson filed a request for administrative remedy ("AR") seeking to have respondent calculate the maximum amount of credits that he may earn up until his projected satisfaction date, May 7, 2026, consistent with the dictates of BOP PS 5410.01 Section 10(c).  Id.  He asserts the PS requires respondent to do this, and that they have not done it.  Id.

Respondent responded to this AR by noting Mr. Johnson was earning and able to apply FTCs.  See Docket No. 1-1 at p. 2.  Respondent set forth the fact that Mr. Johnson had earned 365 days towards early transfer to supervised release and an additional 70 days of FTCs to be applied to placement at either a residential reentry center or home confinement.  Id.  Respondent assured Mr. Johnson that his FTCs would be monitored at each regularly scheduled program review.  Id.

Mr. Johnson appealed this decision to the regional level, noting that the warden's response to his AR only told Mr. Johnson the total number of FTCs he *had* earned, while not giving him the information he requested:  namely, the maximum number of FTC he *could* earn in the future if he remained in earning status until his projected satisfaction date.  Docket No. 1-1 at p. 3.  The BOP regional office responded to Mr. Johnson that "The Bureau of Prisons is

4

currently developing the technical resources to project [future] FTCs. As of this date, the resources are unavailable to make projections." Id. at p. 4.

Mr. Johnson appealed to the Central Office. Id. at p. 5. The Central Office responded by affirming the decisions made at earlier steps of the appeal process. Id. at p. 6. It told Mr. Johnson he currently had 365 days of FTC credit toward early release and 130 days that may be applied toward community placement. Id. The Central Office also told Mr. Johnson his calculation of FTC credits would be updated monthly, but noted that the BOP was still working to implement a program for forecasting potential future FTC that prisoners may earn over the course of their sentence, but that program "has not yet been enacted." Id. Respondent states that Mr. Johnson has fully satisfied his requirement to exhaust his administrative remedies within the BOP administrative remedy process. Docket No. 9 at p. 6, ¶ 15.

The issue presented in this § 2241 petition is the same issue presented throughout the AR process. Mr. Johnson argues that BOP PS 5410.01, Section 10(c) requires the BOP to provide calculations of future FTCs which a prisoner is projected to earn over the course of serving his or her sentence. He asserts respondent is not doing what the PS requires. He requests this court "hold the BOP responsible for upholding their policy regarding FTC calculations." Docket No. 11 at p. 2.

Respondent argues that Mr. Johnson has not stated a claim upon which relief may be granted. Docket No. 8 at pp. 7-8. Respondent also argues this court has no jurisdiction to determine Mr. Johnson's claim because the

adjudicative decision of how many FSA credits an inmate has earned and whether to apply those credits in an individual case is a matter over which this court lacks jurisdiction.  Id. at pp. 6-7.

## DISCUSSION

Mr. Johnson's claim, crystalized in his response in opposition to respondent's motion to dismiss, is that BOP PS 5410.01 requires respondent to "calculate the maximum number of FTC an inmate may earn assuming the inmate will be in earning status from the date they enter the BOP system all the way to their projected satisfaction date."  Docket No. 11 at p. 1.  Mr. Johnson admits respondent has calculated and applied the earned credits (365) toward his release date; he argues that they have "in no way calculated the maximum number of FTC [he] may earn, and they have not applied the additional credits, beyond the 365, to [his] residential reentry date, both of which are explicitly stated" in the BOP PS.  Id. at p. 2.

Mr. Johnson and respondent acknowledge that the BOP is in the process of creating a calculator that will automatically fulfill this function of forecasting projected FTC, but that program is not operational yet.  Id. at p. 1; Docket No. 8 at p. 4.  In the interim, Mr. Johnson argues that respondent has an obligation to manually calculate his maximum possible FSA credits now.  Docket No. 11 at pp. 1-2.

**A.      Subject Matter Jurisdiction**

The court first addresses respondent's assertion that this court lacks jurisdiction to entertain Mr. Johnson's petition.  When the BOP promulgates

6

rules interpreting legislation passed by Congress, those rulemaking decisions are subject to judicial review. Roberts v. Cox, 4:20-CV-04187-KES, 2022 WL 742489, at *2 (D.S.D. Mar. 11, 2022) (citing 18 U.S.C. § 3625; Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998)); see also Minotti v. Whitehead, 584 F. Supp. 2d 750, 761 (D. Md. 2008); Wiggins v. Wise, 951 F. Supp. 614, 618-19 (S.D. W. Va. 1996).

However, adjudicative decisions in a specific case are not subject to judicial review. Martin, 133 F.3d at 1079; Minotti, 584 F. Supp. 2d at 761; Wiggins, 951 F. Supp. at 618; 18 U.S.C. § 3625 (stating "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter [section 3621-3526]").[1] Adjudications are "determinations which apply rules to individual cases." Wiggins, 951 F. Supp. at 618 (citing Hercules, Inc. v. EPA, 598 F.2d 91 (D.C. Cir. 1978)). Adjudications involve "retrospective particularized fact-finding for each prisoner." Minotti, 584 F. Supp. 2d at 761. A challenge to the BOP's calculation of a prisoner's FSA credits in a specific case is an adjudicative decision which is not subject to judicial review. Roberts, 2022 WL 742489, at *2.

Respondent asserts Mr. Johnson's petition presents an attack on a BOP adjudicative decision in Mr. Johnson's case. Docket No. 8 at p. 6. The court

---

[1] Sections 554, 555, and 701-706 of Title 5 are those provisions of the Administrative Procedure Act providing for, *inter alia*, judicial review of decisions by federal agencies. Wiggins, 951 F. Supp. at 618.

7

does not interpret Mr. Johnson's petition in that light.  Certainly, to the extent Mr. Johnson seeks an order of this court requiring the respondent to provide him with a future projection of FTC he will earn under the FSA during the course of his sentence, that would be an adjudicative decision and the court would lack jurisdiction to entertain such a claim.  To the extent that is part of what Mr. Johnson seeks, the court denies that relief.

But the court does not interpret Mr. Johnson to be solely or even primarily seeking a calculation of FTC in his case.  Rather, his position is that the BOP has issued BOP PS 5410.01 and has stated it will provide all prisoners with a calculation of the future FTC a prisoner may earn if they remain in earning status throughout their sentence.  The BOP has not done this in Mr. Johnson's specific case but has not done it for any prisoner.  Mr. Johnson seeks an order of the court requiring the BOP to comply with their own policy statement—for himself and all federal prisoners.  The court finds this request for relief does fall within the court's subject matter jurisdiction.  Accordingly, the court examines that claim on its merits.

**B.     Whether Mr. Johnson Has Stated a Claim Meriting Relief**

In order to understand Mr. Johnson's claim, the court examines not only the policy statement, but the statute from which it emanates.  BOP PS 5410.01 implements that portion of the FSA codified at 18 U.S.C. § 3632(d)(4).  See BOP PS 5410.01 at p. 1.

Section 3632(d)(4) sets forth a system for granting earned time credits to eligible prisoners who successfully participate in recidivism reduction programs

8

or productive activities.  See 18 U.S.C. § 3632(d)(4).  Congress described in this provision which prisoners were "eligible" and "ineligible" for FSA credits.  Id. § 3624(d)(4)(D).  It also set forth rules for whether a prisoner should be given 10 days of time credits for every 30 days of successful participation in a qualifying program or 15 days credits for every 30 days of participation.  Id. § 3624(d)(4)(A).  Section 3632(d)(4) also states that FSA time credits earned by eligible prisoners "shall be applied toward time in prerelease custody or supervised release."  Id. § 3624(d)(4)(C).  Notably, § 3632(d)(4) says nothing about the BOP being required to calculate a prisoner's maximum possible FSA credits assuming he continues to be eligible and earning those credits until his release.

Section 523.44 of title 28 of the Code of Federal Regulations also describes the application of FSA time credits.  28 C.F.R. § 523.44.  That regulation also does not contain a requirement that the BOP provide prisoners with a future forecast of FSA credits they may earn if they remain in earning status the entire length of their sentences.  Id.  The requirement, which Mr. Johnson insists on, emanates only from PS 5410.01, Section 10(c).  Respondent admits that it is not currently meeting the requirement contained in the policy statement.  Cf. Docket No. 8 at p. 4.  The issue raised by Mr. Johnson's petition, then, is whether the BOP's non-adherence to its own policy statement is a claim cognizable in a § 2241 habeas petition.

Section 2241 states that writs of habeas corpus may be granted to a prisoner in federal custody "in violation of the Constitution or laws or treaties

9

of the United States." 28 U.S.C. § 2241(c)(3). Mr. Johnson has not identified a constitutional provision he believes respondent has violated, nor has he asserted that respondent has violated a treaty.

Even if this court were to read a procedural due process claim into Mr. Johnson's petition, it would only be colorable if a liberty interest were at stake. Cf. Mathews v. Eldridge, 424 U.S. 319, 332 (1976). But in the context of a civil claim under 42 U.S.C. § 1983, the Eighth Circuit has stated "there is no federal constitutional liberty interest in having . . . prison officials follow prison regulations." Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003). And to the extent Mr. Johnson is arguing that the lack of the calculation may delay his transfer to a residential re-entry center or home confinement, the court is reminded that Mr. Johnson possesses no liberty interest in such a transfer either. Cf. Wilkinson v. Austin, 545 U.S. 209, 222–23 (2005).

Therefore, the court must decide whether violation of the agency's program statement constitutes violation of a "law . . . of the United States" sufficient to justify the granting of habeas relief. Id.

In the specific context of habeas claims, where the claim rests on a statute and not a constitutional provision, relief will not be granted absent a demonstration that there has been a "fundamental defect which inherently results in a complete miscarriage of justice." Stone v. Powell, 428 U.S. 465, 477 n.10 (1976). Stated another way, a nonconstitutional claim must "present 'exceptional circumstances where the need for the remedy afforded by the writ

of habeas corpus is apparent.'" Hill v. United States, 368 U.S. 424, 428 (1962) (quoting Bowen v. Johnston, 306 U.S. 19, 27 (1939)).

Here, the court notes that Mr. Johnson does not take issue with how respondent has calculated his FTC to date. Rather, he wishes to obtain (commensurate with the PS) a future forecast of the FTC he will earn through the end of his sentence if he continues to be eligible to earn FTC and continues to earn the maximum FTC possible. Mr. Johnson also does not dispute that the respondent is providing updates about FTC earned every 30 days.

Section 2241 is the proper statute to invoke if a prisoner believes he was denied sentence credits for good time or pretrial detention. Reno v. Koray, 515 U.S. 50, 52-53 (1995); Bell v. United States, 48 F.3d 1042, 1043-44 (8th Cir. 1995). It is also the proper vehicle to litigate parole determinations. See Sherman v. U.S. Parole Comm'n, 502 F.3d 869 (9th Cir. 2007).

However, Mr. Johnson makes no showing or argument that the lack of this future forecast of FTC lengthens his sentence in any way, let alone that it does so in a way that violates his constitutional or otherwise fundamental rights. A program statement published by an administrative agency is not a statute of the United States. Cf. Reno, 515 U.S. at 60–61; see also Reeb v. Thomas, 636 F.3d 1224, 1227–28 (9th Cir. 2011). Statutes are enacted by both houses of Congress and signed into law by the president. U.S. CONST. art I, § 7, cl. 2. The BOP PS in this case did not come into existence through that procedure. Without a showing of harm due to respondent's failure to provide the future forecast of FTC, Mr. Johnson cannot meet the fundamentality

requirement that applies to nonconstitutional claims raised in habeas petitions. For these reasons, this magistrate judge respectfully recommends granting respondent's motion to dismiss Mr. Johnson's petition for failure to state a claim.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends granting respondent's motion to dismiss Mr. Johnson's petition because it does not state a claim upon which relief may be granted.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 29th day of March, 2024.

BY THE COURT:

/s/ Veronica L. Duffy

VERONICA L. DUFFY
United States Magistrate Judge